UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROLAND A. AGUIAR, | § | |
| No. 319513, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL NO. SA-15-CV-14-DAE (HWB) |
| | § | |
| KATHERINE WHITELEY, Physician, | § | |
| DAVID GUARDIOLA, RN, | § | |
| KAYLA A. SMITH, LVN, | § | |
| BEXAR COUNTY ADULT DETENTION | § | |
| CENTER,[1] | § | |
| UNIVERSITY HOSPITAL, and | § | |
| ROBERT B. GREEN CLINIC, | § | |
| | § | |
| Defendants. | § | |

## SECOND MEMORANDUM OPINION AND ORDER

Plaintiff Roland A. Aguiar has filed a civil rights action naming as defendants a physician and two nurses employed at the Bexar County Adult Detention Center ("BCADC"), the BCADC, University Hospital, and the Robert B. Green Clinic and demanding five million dollars in monetary damages as well as injunctive relief for alleged inadequate medical care. Defendant Bexar County Hospital District d/b/a University Hospital (henceforth "Hospital District"), the Robert B. Green Clinic, and Correctional Health Care Services has filed a pair of motions to dismiss pursuant to Rule 12(b)(6) for failure to state a cause of action (ECF nos. 30 & 34). For the reasons set forth below,

---

[1] The Bexar County Adult Detention Center is a building operated as a pretrial detention facility by Bexar County, Texas. The BCADC is not a legal entity separate and distinct from Bexar County. As such, this Court will liberally construe plaintiff's action in naming the BCADC as a defendant as an attempt by the pro se plaintiff to bring suit against Bexar County, Texas. *See Darby v. Pasadena Police Dept.*, 939 F.2d 312, 313-14 (5th Cir. 1991) (holding municipal police department in Texas home rule city could not be sued or bring suit in its own name - city was the proper defendant and suit against police department could properly be dismissed).

the Hospital District's motions to dismiss will be granted.  Additionally, the Court will sua sponte dismiss plaintiff's claims against defendant BCADC as frivolous and for failure to exhaust available administrative remedies, as required by 42 U.S.C. § 1997e(a).  The Court will also sua sponte dismiss plaintiff's claims against defendants Guardiola and Smith as frivolous.

## I. <u>Background</u>

Plaintiff filed this Section 1983 action on January 8, 2015, alleging (1) on or about January 10, 2013, while plaintiff was an inmate at the BCADC, a nurse named David Guardiola employed at the BCADC (a) erroneously administered the wrong dosage of an unspecified medication to plaintiff, causing plaintiff to suffer over-dose reactions and (b) subsequently injured plaintiff's legs, ribs, and lower spinal area when this defendant turned plaintiff on plaintiff's back; (2) on the same date, another BCADC nurse named Kayla A. Smith was present, observed plaintiff's situation, but failed to take action to prevent injury to plaintiff or to respond to plaintiff's medical situation; (3) BCADC physician Dr. Katherine Whiteley was informed on an unspecified date of the actions of the two nurses but refused to take corrective action or to furnish plaintiff with unspecified medical care for plaintiff's injuries and medical needs; (4) plaintiff was subsequently taken to University Hospital where he received inadequate medical care from January, 2013 through August 20, 2014; (5) at some point, plaintiff was taken to Robert B. Green Clinic where an unidentified nurse negligently inserted a catheter into plaintiff, causing plaintiff unspecified harm; and (6) at all times relevant to the foregoing events, plaintiff was recuperating from a motor vehicle accident which rendered plaintiff a paraplegic who lacked control over his bowels.

Defendant Whiteley filed a motion pursuant to Rule 12(b)(6) to dismiss plaintiff's claims against her for failure to state a cause of action (ECF no. 11), which this Court granted in a Memorandum Opinion and Order issued May 1, 2015 (ECF no. 14).

## II. Defendant Bexar County Hospital District's Motions to Dismiss

Defendant Bexar County Hospital District (henceforth "Hospital District") is a hospital district created under state statutory and state constitutional authority which operates several health care facilities in Bexar County, Texas, including the Robert B. Green Clinic, University Hospital, and Correctional Health Care Services.  Neither the Robert B. Green Clinic, University Hospital, nor Correctional Health Care Services are separate jural entities capable of suing or being sued independently of the Hospital District.  All of the allegedly improper treatment and inadequate medical care about which plaintiff complains in this Section 1983 lawsuit was rendered at facilities operated by the Hospital District.

In its first motion to dismiss, the Hospital District argues plaintiff's lawsuit fails to state a cause of action because (1) the Hospital District may not be held liable in a Section 1983 action based upon *respondeat superior* or any other theory of vicarious liability and (2) plaintiff has failed to allege any facts showing that any of the incidents about which plaintiff complains were the products or results of any action or omission taken by final Hospital District policymakers or of any official policy, longstanding custom, or widespread practice attributable to final Hospital District policymakers (ECF no.30).  In its second motion to dismiss, the Hospital District argues plaintiff has failed to allege any facts showing he ever filed a grievance or took any action to exhaust available administrative remedies before filing this lawsuit against the Hospital District (ECF no. 34).

3

### III. <u>Standard of Review Under Rule 12(b)(6), FED.R.CIV.P.</u>

The pleading standard set forth in Rule 8(a)(2), FED.R.CIV.P., (which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief") does not require detailed factual allegations but it does demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. at 678, 129 S. Ct. at 1949; *Central States, Southeast and Southwest Areas Health and Welfare Fund ex rel. Bunte v. Health Special Risk, Inc.*, 756 F.3d 356, 360 (5th Cir. 2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. at 678, 129 S. Ct. at 1949; *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1935 (2014). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 555, 127 S. Ct. at 1965; *Central States, Southeast and Southwest Areas Health and Welfare Fund ex rel. Bunte v. Health Special Risk, Inc.*, 756 F.3d at 360. A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. *Ashcroft v. Iqbal,* 556 U.S. at 678, 129 S. Ct. at 1949; *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65. Nor does a complaint suffice if it renders "naked assertions" devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966.

#### IV. <u>Standard of Review Under 28 U.S.C. §§ 1915(e)(2) & 1915A(b)</u>

When Congress enacted the Prison Litigation Reform Act of 1996 ("PLRA"), it specifically amended Title 28 U.S.C. § 1915(e) (2) (B) (i) and added new § 1915A to provide that a complaint filed by a prisoner could be dismissed as frivolous regardless of whether any filing fee or portion thereof had been paid. *Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998), *cert. denied*, 527 U.S. 1041 (1999). Therefore, plaintiff's claims herein are subject to review under § 1915(e) and dismissal as frivolous regardless of whether he paid any portion of the filing fee in this cause. *See Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998) (holding the federal district courts are required to dismiss any action brought by a prisoner that is frivolous, malicious, fails to state a cause of action, or seeks monetary damages from a defendant who is immune from such relief); 42 U.S.C. §1997e(c).

Title 28 U.S.C. § 1915(e) accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complainant's factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 31-32, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992); *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989); *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995). The PLRA moved the relevant statutory provision addressing dismissal for frivolousness from former subsection (d) of § 1915 to new subsection (e) (2) (B) and expanded the scope of that statute to expressly authorize dismissals of lawsuits as frivolous regardless of whether a filing fee or any portion thereof had been paid. *Jackson v. Stinnett*, 102 F.3d 132, 136-37 (5th Cir. 1996); 28 U.S.C. §1915(e) (2) (B) (i).

In an action filed *in forma pauperis*, a court may raise sua sponte the issue of whether an action is malicious or frivolous under § 1915(e). *Neitzke v. Williams*, 490 U.S. at 327, 109 S. Ct. at

1833; *Harris v. Hegmann,* 198 F.3d 153, 156 (5th Cir. 1999) (holding it is appropriate for a district court to *sua sponte* determine whether a claim was barred by limitations); *Schultea v. Wood*, 47 F.3d at 1434.  Dismissal of a claim as frivolous under § 1915(e) is permissible where the claim lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. at 325, 109 S. Ct. at 1831; *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013); *Harris v. Hegmann*, 198 F.3d at 156; *Ruiz v. United States*, 160 F.3d 273, 274 (5th Cir. 1998); *Gonzales v. Wyatt*, 157 F.3d 1016, 1019 (5th Cir. 1998); *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998); *Martin v. Scott*, 156 F.3d at 580 (holding frivolous complaints by a prisoner in administrative segregation regarding restrictions on his recreation and visitation time, possession of personal property, ability to purchase items from the commissary, denial of desert, required jump suit, handcuffs during all transfers, and food that included Vita-Pro); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995); *Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995); *Boyd v. Biggers*, 31 F.3d 279, 281 (5th Cir. 1994); *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994); *Booker v. Koonce*, 2 F.3d 114, 116 (5th Cir. 1993).  A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory.  *Rogers v. Boatright*, 709 F.3d at 407; *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009); *Harris v. Hegmann*, 198 F.3d at 156; *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).  A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless.  *Denton v. Hernandez*, 504 U.S. at 32-33, 112 S. Ct. at 1733-34; *Rogers v. Boatright*, 709 F.3d at 407; *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) (holding dismissal as frivolous appropriate after the plaintiff is given an opportunity to amend or allege additional facts through answers to a post-complaint questionnaire), *cert. denied*,

560 U.S. 944 (2010); *Samford v. Dretke*, 562 F.3d at 678; *Harris v. Hegmann*, 198 F.3d at 156 (holding a complaint is factually frivolous when the facts alleged are fantastic or delusional or the legal theory upon which a complaint relies is indisputably meritless); *Davis v. Scott*, 157 F.3d at 1005, (holding the Magistrate had no duty to ask specific questions during a *Spears* hearing and that the plaintiff remains master of his complaint and is responsible for articulating the facts that give rise to a cognizable claim); *Talib v. Gilley*, 138 F.3d at 213.

Typical examples of claims which can be dismissed pursuant to § 1915(e) include (1) claims against which it is clear that the defendants are immune from suit (*Neitzke v. Williams*, 490 U.S. at 327, 109 S. Ct. at 1833; *Krueger v. Reimer*, 66 F.3d at 76-77 (upholding the dismissal as frivolous of civil rights lawsuits on the grounds that the defendants were entitled to absolute judicial and prosecutorial immunity; *Boyd v. Biggers,* 31 F.3d at 284-85) (holding the same)); (2) claims of infringement of a legal interest that clearly does not exist (*Neitzke v. Williams*, 490 U.S. at 327, 109 S. Ct. at 1833; *Longoria v. Dretke*, 507 F.3d 898, 901 (5th Cir. 2007) (upholding dismissal as frivolous of complaints about prison grooming regulations); *Davis v. Scott*, 157 F.3d at 1005 (holding, absent allegations the plaintiff suffered a physical injury, plaintiff's complaints that he was assigned to a filthy cell for three days did not raise even an arguable basis for relief under the Eighth Amendment); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995) (holding a state prisoner possessed no constitutionally-protected right to grow a beard or his hair long); *Biliski v. Harborth*, 55 F.3d at 162 (holding that a state prisoner's equal protection claims arising out of his being housed at a County jail did not invoke any federal constitutional rights); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992) (affirming the dismissal as frivolous of a claim by a convicted prisoner that he had been denied the opportunity to attend religious and educational classes with the general inmate

population based upon his diagnosis as a mental patient)); and (3) claims which are barred by limitations (*Harris v. Hegmann*, 198 F.3d at 156; *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994); *Gartrell v. Gaylor*, 981 F.2d 254, 259 (5th Cir. 1993); *Henson-El v. Rogers*, 923 F.2d 51, 53 (5th Cir.), *cert. denied*, 501 U.S. 1235 (1991)).

In reviewing a complaint under § 1915(e), a court is not bound to accept without question the truth of the plaintiff's allegations. *Denton v. Hernandez*, 504 U.S. at 32, 112 S. Ct. at 1733; *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992). A court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, fanciful, fantastic, delusional, or otherwise rise to the level of the irrational or the wholly incredible, regardless of whether there are judicially noticeable facts available to contradict them. *Denton v. Hernandez*, 504 U.S. at 32-33, 112 S.Ct at 1733; *Harris v. Hegmann*, 198 F.3d at 156; *Gartrell v. Gaylor*, 981 F.2d 254, 259 (5th Cir. 1993). A district court may dismiss an in forma pauperis proceeding as frivolous under 28 U.S.C. § 1915(e) whenever it appears that the claim has no arguable basis in law or fact. *Stanley v. Foster*, 464 F.3d 565, 569 (5th Cir. 2006) (upholding dismissal as frivolous of prisoner's complaint about the confiscation of a medical pass that was re-issued the same date it was confiscated); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (upholding dismissal as frivolous of prisoner's complaints (1) about alleged failure of prison officials to investigate prisoner's grievances against prison mail room and security staff, (2) of retaliation based upon plaintiff's failure to exhaust administrative remedies, and (3) about allegedly negligent loss of property); *Velasquez v. Woos*, 329 F.3d 420, 421 (5th Cir. 2003) (upholding dismissal as frivolous of prisoner's complaint about collection of DNA sample from plaintiff); *McCormick v. Stalder*, 105 F.3d at 1061 (dismissing as frivolous a prisoner's complaint that he was forced to undergo medical treatment for Tuberculosis

while incarcerated); *Thompson v. Patteson*, 985 F.2d 202, 205 (5th Cir. 1993); *Gartrell v. Gaylor*, 981 F.2d at 259; *Henthorn v. Swinson*, 955 F.2d 351, 352 (5th Cir.), *cert. denied*, 504 U.S. 988 (1992).

In an action proceeding under § 1915(e), a federal court may consider *sua sponte* affirmative defenses that are apparent from the record even where they have not been addressed or raised in the pleadings on file. *Harris v. Hegmann*, 198 F.3d at 156 (recognizing the propriety of a district court's raising the defense of limitations *sua sponte*); *Schultea v. Wood*, 47 F.3d at 1434 (recognizing the authority of the district court to dismiss an action based on the doctrine of qualified immunity); *Gartrell v. Gaylor*, 981 F.2d at 259; *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990) (limitations); *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989) (limitations).  Significantly, the court is authorized to test the proceeding for frivolousness or maliciousness even before service of process or before the filing of an answer.  *Brewster v. Dretke*, 587 F.3d at 767 ("The district court may dismiss an *in forma pauperis* proceeding 'before service of process or before the filing of the answer' as long as certain safeguards are met."); *Harris v. Hegmann*, 198 F.3d at 156; *Schultea v. Wood*, 47 F.3d at 1434; *Gartrell v. Gaylor*, 981 F.2d at 259; *Ali v. Higgs*, 892 F.2d at 440; *Burrell v. Newsome*, 883 F.2d at 418.

A case is not frivolous simply because it fails to state a claim.  *Neitzke v. Williams*, 490 U.S. at 331, 109 S. Ct. at 1834; *Booker v. Koonce*, 2 F.3d at 115; *Gartrell v. Gaylor*, 981 F.2d at 259; *Ancar v. Sara Plasma, Inc*., 964 F.2d at 468.  However, if the claim has no arguable basis in law or fact, the complaint can be dismissed under § 1915(e).  *Gartrell v. Gaylor*, 981 F.2d at 259; *Parker v. Carpenter*, 978 F.2d 190, 191 n.1 (5th Cir. 1992); *Mayfield v. Collins*, 918 F.2d 560, 561 (5th Cir. 1990).  "A complaint is legally frivolous if it is premised on an 'undisputably meritless legal

9

theory.'" *Boyd v. Biggers*, 31 F.3d at 281-82 (*quoting Neitzke v. Williams*, 490 U.S. at 327, 109 S.

Ct. at 1833).  An In Forma Pauperis complaint that recites bare legal conclusions, with no suggestion

of supporting facts, or that postulates facts of an entirely fanciful nature, is a prime candidate for

dismissal under Section 1915(e).  *Ancar v. Sara Plasma, Inc.*, 964 F.2d at 468 (complaints that are

clearly baseless include those which describe fanciful, fantastic, or delusional scenarios); *Gartrell*

*v. Gaylor*, 981 F.2d at 259; *Wesson v. Oglesby*, 910 F.2d at 281.  Furthermore, when it is clear from

the face of the complaint that the claims asserted are subject to an obvious meritorious defense, such

as a peremptory time bar, dismissal with prejudice is appropriate.  *Graves v. Hampton*, 1 F.3d 315,

319-20 (5th Cir. 1993).

### V. The Requirement of Exhaustion of Administrative Remedies

"Under the Prison Litigation Reform Act, 'No action shall be brought with respect to prison

conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any

jail, prison, or other correctional facility until such administrative remedies as are available are

exhausted.'" *Davis v. Hernandez*, 798 F.3d 290, 294 (5th Cir. 2015); 42 U.S.C. § 1997e(a).  The

Hospital District's second motion to dismiss is accompanied by what are represented to be copies

of all grievances filed by plaintiff during the first half of calendar year 2013, specifically grievances

filed on January 1, January 17, February 12, another unspecified date in February, March 18, April

17, May 28, and June 12.  In none of those grievances did plaintiff complain in any intelligible

manner about any of the incidents on or about January 10, 2013 which form the basis for the vast

majority of plaintiff's claims in this § 1983 lawsuit.

## VI. <u>Section 1983 Generally</u>

Title 42 U.S.C. § 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of federal statutory and constitutional rights. *Sepulvado v. Jindal*, 729 F.3d 413, 420 n.17 (5th Cir. 2013), *cert. denied,* 134 S. Ct. 1789 (2014); *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008); *Hernandez ex rel. Hernandez v. Texas Department of Protective and Regulatory Services*, 380 F.3d 872, 879-80 (5th Cir. 2004). There are two essential elements to a § 1983 action: (1) the conduct in question must be committed by a person acting under color of state law; and (2) the conduct must deprive the plaintiff of a right secured by the Constitution or the laws of the United States. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1935 (2014); *Romano v. Greenstein*, 721 F.3d 373, 377 (5th Cir. 2013); *Wyatt v. Fletcher*, 718 F.3d 496, 517 (5th Cir. 2013). In order to state a cause of action under Section 1983, a plaintiff must allege facts establishing that an otherwise private defendant acted "under color" of state law. *Rundus v. City of Dallas, Texas*, 634 F.3d 309, 312 (5th Cir. 2011) (to show there is state action by an otherwise private entity, the plaintiff must show either (1) the private entity's action represents an official-City policy or custom or (2) the defendant's action in enacting and enforcing the restriction is "fairly attributable" to the City), *cert. denied*, 132 S. Ct. 107 (2011); *Castro Romero v. Becken*, 256 F.3d 349, 354 (5th Cir. 2001) (holding no §1983 liability could exist with regard to private defendants absent allegations the non-governmental defendants acted in concert with a governmental entity to deprive the plaintiff of his rights). Stated somewhat differently, a claim for relief under 42 U.S.C. § 1983 must contain two elements: (1) that plaintiff has been deprived of a right secured by the Constitution or laws of the United States; and (2) that the defendant acted under color of state law. *Kovacic v. Villarreal*, 628 F.3d 209, 213 (5th Cir. 2010),

11

*cert. denied*, 131 S. Ct. 2995 (2011); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2010) (a person acts under color of state law if he misuses "power" possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law).

Insofar as plaintiff complains defendants Hospital District or Bexar County failed to comply state statutes or code provisions, that claim is *non sequitur*. Absent some showing that a defendant violated the plaintiff's *federal* constitutional rights, complaints about the violation of state statutes or state agency regulations are insufficient as a matter of law to support a claim for relief under Section 1983. *See Jones v. Lowndes County, Mississippi*, 678 F.3d 344, 352 (5th Cir. 2012) ("[A]n alleged violation of a state statute does not give rise to a corresponding § 1983 violation, unless the right encompassed in the state statute is guaranteed under the United States Constitution."); *Black v. Warren*, 134 F.3d 732, 734 (5th Cir. 1998) (holding alleged violations of TDCJ procedural rules regarding notice and the right to call witnesses and present documentary evidence at a disciplinary hearing did not present an arguable basis to support a due process claim); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (holding a prison official's failure to follow the prison's own policies, procedures, and regulations does not constitute a violation of due process if constitutional minima are nevertheless met). "Section 1983 provides a cause of action for violations of federal statutes as long as the statute (1) creates an enforceable right and (2) does not foreclose enforcement under § 1983." *Romano v. Greenstein*, 721 F.3d at 377 (*citing Wilder v. Virginia Hospital Association*, 496 U.S. 498, 508, 110 S. Ct. 2510, 2517, 110 L. Ed. 2d 455 (1990)).

Finally, mere negligence by a state official does not give rise to § 1983 liability. *Daniels v. Williams*, 474 U.S. 327, 332-35, 106 S. Ct. 662, 665-67, 88 L. Ed. 2d 662 (1986). A showing of merely negligent conduct by an official is insufficient to overcome the defense of qualified

immunity.  *Whitley v. Hanna*, 726 F.3d at 643 ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and thus do not divest the official of qualified immunity."); *Zarnow v. City of Wichita Falls, Texas*, 500 F.3d 401, 410 (5th Cir. 2007) (negligence will not support the denial of qualified immunity); *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (holding the same).  Negligent failure to supervise or train does not satisfy the "deliberate indifference" standard and will likewise not support a § 1983 claim against a municipal entity. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392, 109 S. Ct. 1197, 1206, 103 L. Ed. 2d 412 (1989) (holding only a showing of deliberate indifference by municipal policy makers will support Section 1983 liability based on a failure-to-train claim); *Zarnow v. City of Wichita Falls, Texas*, 614 F.3d 161, 170 (5th Cir. 2010) ("'Unintentionally negligent oversight' does not satisfy the deliberate indifference standard."), *cert. denied*, 131 S. Ct. 3059 (2011); *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (holding the same), *cert. denied*, 563 U.S. 935 (2011).

## VII. <u>Qualified Immunity</u>

As public employees performing discretionary roles, nurses Guardiola and Smith are entitled to the benefits of the doctrine of qualified immunity.  Even when a state official or employee or other person acting under color of state law engages in constitutionally impermissible conduct, the defendant may nevertheless be shielded from liability for civil damages if the defendant's actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515, 153 L. Ed. 2d 666 (2002).  "Qualified immunity gives government officials breathing room to make reasonable but

mistaken judgments about open legal questions." *Ashcroft v. al–Kidd,* 131 S. Ct. 2074, 2085, 179 L. Ed. 2d 1149 (2011); *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013).

A.    Overview

The defense of qualified immunity first recognized in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982), is neither a complete barrier to recovery nor a true affirmative defense.   Rather, its invocation serves to shift the burdens of pleading and proof in federal civil rights lawsuits brought against public officials for actions or omissions attending their performance of official duties.   A party seeking damages from an official asserting Harlow qualified immunity bears the burden of overcoming that defense.   *McCreary v. Richardson*, 738 F.3d at 655; *Wyatt v. Fletcher*, 718 F.3d 496, 802 (5th Cir. 2013); *Crostley v. Lamar County, Texas*, 717 F.3d 410, 422 (5th Cir. 2013).   Once a government official or employee has asserted qualified immunity and established that the allegedly wrongful acts were undertaken within the scope of his discretionary authority, the burden shifts to the party seeking damages to show that qualified immunity does *not* bar recovery.   The Fifth Circuit has authorized the dismissal as frivolous of civil rights claims which fail to establish a violation of the plaintiff's "clearly established" federal rights.   *See Moore v. Carwell*, 168 F.3d 234, 236-37 (5th Cir. 1999) (affirming summary dismissal of complaint against state prison officials as frivolous on qualified immunity grounds).   An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity.   *Tamez v. City of San Marcos, Texas*, 118 F.3d 1085, 1091-92 (5th Cir. 1997), *cert. denied*, 522 U.S. 1125 (1998); *see also Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (qualified immunity shields government officials acting within their discretionary authority from liability when their conduct does not violate clearly established statutory or constitutional law of

14

which a reasonable person would have known), *cert. denied sub nom. Ashabranner v. Goodman*, 558 U.S. 1148 (2010); *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 418 (5th Cir. 2008) (holding the same); *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008) (holding the same).

An official acts within the scope of his authority if he discharges the duties generally assigned to him. *Tamez v. City of San Marcos, Texas*, 118 F.3d at 1091-92. For executive officers in general, qualified immunity is the norm. *Malley v. Briggs*, 475 U.S. at 340; *Harlow v. Fitzgerald*, 457 U.S. at 807.

> [Q]ualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz,* 533 U.S., at 206, 121 S. Ct. 2151. For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see Mitchell [v. *Forsyth,* 472 U.S. 511,] 535, n. 12, 105 S. Ct. 2806, 86 L. Ed. 2d 411; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).
>
> Officers sued in a civil action for damages under 42 U.S.C. § 1983 have the same right to fair notice as do defendants charged with the criminal offense defined in 18 U.S.C. § 242. Section 242 makes it a crime for a state official to act "willfully" and under color of law to deprive a person of rights protected by the Constitution. In *United States v. Lanier,* 520 U.S. 259, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997), we held that the defendant was entitled to "fair warning" that his conduct deprived his victim of a constitutional right, and that the standard for determining the adequacy of that warning was the same as the standard for determining whether a constitutional right was "clearly established" in civil litigation under § 1983.

*Hope v. Pelzer*, 536 U.S. at 739-40, 122 S. Ct. at 2515.

B.     Discovery Generally Unavailable

The Supreme Court has admonished district courts that the *Harlow* qualified immunity is an immunity *from suit* rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The Supreme Court and the Fifth Circuit have also strongly encouraged district courts to dispose of §1983 lawsuits in which qualified immunity claims are apparent from the pleadings without resort to cumbersome and expensive discovery. *See Siegert v. Gilley*, 500 U.S. 226, 231-302 (1991) (holding that, until a determination is made that the plaintiff's clearly established constitutional rights were violated, discovery should not be allowed); *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) (recognizing one of the purposes of qualified immunity is to protect public officials from the broad-ranging discovery that can be peculiarly disruptive of effective government); *Mitchell v. Forsyth*, 472 U.S. at 526-27 (holding denials of qualified immunity are subject to immediate appellate review because the protection afforded by qualified immunity is one from suit, not just liability); *Harlow v. Fitzgerald*, 457 U.S. at 818 ("If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed.").

Once a defendant pleads qualified immunity, the judge must first determine whether the plaintiff has asserted a violation of a constitutional right, then whether the defendant's actions were objectively reasonable in light of the law that was clearly established at the time the contested action occurred; until this threshold is resolved, discovery should not be allowed. *Siegert v. Gilley*, 500 U.S. at 232-33; *Harlow v. Fitzgerald*, 457 U.S. at 818. Currently applicable constitutional standards are

used in making the determination as to whether the defendant's conduct violated a plaintiff's "clearly established" constitutionally-protected right. *Siegert v. Gilley*, 500 U.S. at 231; *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006). If the plaintiff passes this threshold, the Court must determine whether the defendant's conduct was "objectively reasonable" under legal principles as they existed at the time of the defendant's acts or omissions. *See Wyatt v. Fletcher*, 718 F.3d at 502 (a right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right); *Easter v. Powell*, 467 F.3d at 462 ("First, we determine whether, under current constitutional standards, the plaintiff has alleged a violation of a clearly established constitutional right. If so, we then decide if the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident." (*Footnote omitted*); *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1992) ("The contour, or standard, for a constitutional right may expand after the time of the alleged violation, and may be the benchmark for proof at trial that right and its claimed violation; but as stated, the benchmark for objective reasonableness is that which existed at the time of the alleged violation -- we look to the clearly established law at that time."). In summary, the two-pronged qualified immunity test inquires first whether the defendant's conduct violated the plaintiff's clearly established constitutional rights and, second, whether the defendant's conduct was nonetheless objectively reasonable in light of legal principles as they existed at that time. *Haverda v. Hays County*, 723 F.3d 586, 598 (5th Cir. 2013); *Wyatt v. Fletcher*, 718 F.3d at 502; *Prison Legal News v. Livingston*, 683 F.3d 201, 224 (5th Cir. 2012).

C.      Pleading and Preliminary Determinations

        The Fifth Circuit Court of Appeals has also repeatedly encouraged the district courts to (1)

require highly fact-specific pleading by a plaintiff in a §1983 lawsuit who attempts to overcome a

plea of *Harlow* qualified immunity (*Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999); *Baker v.

Putnal*, 75 F.3d 190, 195 (5th Cir. 1996); *Todd v. Hawk*, 72 F.3d at 446; *Schultea v. Wood*, 47 F.3d

1427, 1430 (5th Cir. 1995)); and (2) permit limited discovery pending disposition of the qualified

immunity issue only in those extraordinary situations in which the specific facts contained in the

plaintiff's pleadings and affidavits are sufficient to defeat the defendant's claims of qualified

immunity.  *Reyes v. Sazan*, 168 F.3d at 161.  This heightened pleading requirement applies to *pro

se* litigants.  *Jackson v. City of Beaumont Police Department*, 958 F.2d 616, 621 (5th Cir. 1992);

*Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986).  "[P]laintiffs must demonstrate *prior to

discovery* that their allegations are sufficiently fact-specific to remove the cloak of protection

afforded by an immunity defense."  *Jackson v. City of Beaumont Police Department*, 958 F.2d at

620; *Reyes v. Sazan*, 168 F.3d at 161; *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994); *James v.

Sadler*, 909 F.2d 834, 838 (5th Cir. 1990) (holding questions regarding qualified immunity are

resolved on the face of the pleadings and with limited resort to pre-trial discovery).  A complaint

which raises the likely issue of immunity cannot be cast in broad, vague, general, indefinite, or

conclusory terms, but must include detailed facts supporting the contention that the plea of immunity

cannot be sustained.  *Gobert v. Caldwell*, 463 F.3d 339, 348 n.27 (5th Cir. 2006); *Michalik v.

Hermann*, 422 F.3d 252, 262 (5th Cir. 2005); *Southard v. Texas Board of Criminal Justice*, 114 F.3d

539, 555 (5th Cir. 1997).  Discovery related to the applicability of qualified immunity is appropriate

only when factual issues exist as to the applicability of qualified immunity.  *Gaines v. Davis*, 928 F.2d 705, 707 (5th Cir. 1991).

D.     The Standard

Although the exact statement of *Harlow* qualified immunity may vary from case-to-case, as explained above, the Supreme Court and the Fifth Circuit have consistently held that, in order for a civil rights defendant pleading *Harlow* immunity to be liable, the defendant official's conduct must have violated "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Ashcroft v. Al-Kidd*, 131 S. Ct. at 2090; *Anderson v. Creighton*, 483 U.S. at 646 n.6; *Harlow v. Fitzgerald*, 457 U.S. at 818; *Wyatt v. Fletcher*, 718 F.3d at 502; *Easter v. Powell*, 467 F.3d at 462.  If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity.  *See Lewis v. University of Texas Medical Branch*, 665 F.3d 625, 631 (5th Cir. 2011); *Zarnow v. City of Wichita Falls, Texas*, 500 F.3d 401, 407-8 (5th Cir. 2007); *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986) ("Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue.").  Whether the conduct of which the plaintiff complains violated clearly established law is essentially a legal question.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  In a § 1983 lawsuit, the relevant inquiry is whether the legal right which the plaintiff asserts was violated was clearly established under federal law.  *Pierce v. Smith*, 117 F.3d 866, 871 n.5 (5th Cir. 1997).  Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful act or omission generally turns on the "objective legal reasonableness" of the act or omission assessed in the light of the legal rules that were "clearly established" at the time it was taken.  *Anderson v. Creighton*, 483 U.S. at 639, 107 S. Ct. at 3038.

19

For the legal rules to be considered "clearly established," the contours of the right alleged to have been violated "must be sufficiently clear that a reasonable official would understand that what he is doing violates the right"; that is, "in the light of preexisting law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. at 640.  While there need not have been a specific ruling squarely in point on the issue in question, the law must have been sufficiently clear to put the official on notice of the impropriety of his actions. *Kinney v. Weaver*, 367 F.3d 337, 372 (5th Cir.), *cert. denied*, 543 U.S. 872 (2004); *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir.), *cert. denied*, 525 U.S. 872 (1998).  The Fifth Circuit has directed courts to initially examine Supreme Court and Fifth Circuit precedent, i.e., "controlling authority," in the course of determining whether a legal principle is "clearly established"; the law of other Circuits may be considered when "a consensus of cases of persuasive authority [is] such that a reasonable officer could not have believed that his actions were lawful." *McClendon v. City of Columbia*, 305 F.3d 314, 328 (5th Cir.) (*en banc*), *cert. denied*, 537 U.S. 1232 (2002).

The second step in the qualified immunity analysis is the determination of the objective reasonableness of the defendant's act or omission.  Objective reasonableness is assessed in light of the legal rules clearly established at the time of the incident; an officer's conduct is not objectively reasonable when all reasonable officials would have realized the particular challenged conduct violated the constitutional provisions sued on.  The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.  *Hunter v. Bryant*, 502 U.S. 224, 229 (1991); *Malley v. Briggs*, 475 U.S. 335, 343 (1986).  In addition, merely negligent conduct on the part of a government official cannot meet the rather

stringent standard for liability under 42 U.S.C. §1983.  *Daniels v. Williams*, 474 U.S. 326, 331-34 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

## VIII. Municipal & Governmental Liability Under § 1983

Plaintiff's original complaint named employees of the Hospital District as defendants, but alleged no specific facts showing that any alleged injury to plaintiff or alleged violation of plaintiff's federal constitutional rights was actually caused by an official policy, procedure, practice, or custom attributable to the Hospital District.  Likewise, plaintiff named the BCADC as a defendant but has alleged no facts showing any official or employee of Bexar County ever violated any of plaintiff's federal constitutional rights.  Nor has plaintiff alleged any facts showing any person possessing final policymaking or final decision-making authority on behalf of Bexar County had any personal involvement in or personal knowledge of, any of the events about which plaintiff complains in this lawsuit or in his grievances.

A.    The Nature of Municipal Liability, Generally

As public officials performing discretionary tasks, individual public officers are entitled to assert the protection of *Harlow* qualified immunity.  However, local governmental entities such as cities, counties, and school districts may not assert the protection of qualified immunity.  *Leatherman v. Tarrant County Narcotics Unit*, 507 U.S. 163, 166 (1993); *Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *Brandon v. Holt*, 469 U.S. 464, 472-73 (1985); *Owen v. City of Independence*, 445 U.S. 622, 638 (1980); *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) ("[M]unicipalities do not enjoy immunity from suit."); *Turner v. Huoma Municipal Fire and Police Civil Service Board*, 229 F.3d 478, 483 (5th Cir. 2000) (holding defenses such as qualified immunity and absolute judicial immunity do not apply to claims brought against officials in their "official" capacities); *Burge v.*

21

*Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999); *Stefanoff v. Hays County*, 154 F.3d 523, 525 (5th Cir. 1998); *Meadowbriar Home for Children v. Gunn*, 81 F.3d 521, 532 (5th Cir. 1996); *Babb v. Dorman*, 33 F.3d 472, 475 n.5 (5th Cir. 1994); *Colle v. Brazos County, Texas*, 981 F.2d 237, 244 n.36 (5th Cir. 1993); *Fields v. City of South Houston, Texas*, 922 F.2d 1183, 1191 (5th Cir. 1991). For purposes of liability under § 1983, cities, counties, and other local governmental entities are treated the same. *Colle v. Brazos County, Texas*, 981 F.2d at 244 n.30.

B.   Municipal Liability Under Section 1983

In order to recover a judgment against a local governmental entity under Section 1983, a plaintiff must establish that he sustained a deprivation of constitutional or other federally-protected rights as a result of some official policy, practice, or custom of that governmental entity. *Board of County Commissioners, Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403-04 (1997); *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004) (holding that, for a municipality to be liable on account of its policy, the plaintiff must show among other things, either (1) the policy itself violated federal law or authorized or directed deprivation of federal rights or (2) the policy was adopted or maintained by the municipality's policymakers with deliberate indifference as to its known or obvious consequences); *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004); *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003); *Harris v. Victoria I.S.D.*, 168 F.3d 216, 225 (5th Cir. 1999), *cert. denied*, 528 U.S. 1022 (1999); *Doe v. Dallas I.S.D.*, 153 F.3d 211, 215-16 (5th Cir. 1998); *Spiller v. City of Texas City, Police Department*, 130 F.3d 162, 167 (5th Cir. 1997). Although occasionally referred to as if they were three distinct creatures, a local governmental entity's official "policies," "practices," and "customs" are really three different terms for those actions which sufficiently bear the imprimatur of a governmental entity's

22

final policy-makers to justify holding the governmental entity responsible therefor. *Board of County Commissioners, Bryan County, Oklahoma v. Brown*, 520 U.S. at 404-05 (holding only *deliberate* conduct by a municipality which actually causes an injury is compensable under § 1983); *Spiller v. City of Texas City, Police Department*, 130 F.3d at 167; *Leffall v. Dallas I.S.D.*, 28 F.3d 521, 525 (5th Cir. 1994). An official "policy" is most commonly defined as a policy statement, ordinance, regulation, or decision that is officially adopted or promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy making authority. *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004) (defining "municipal policy," in part, as a "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority); *In re Foust*, 310 F.3d 849, 861 (5th Cir. 2002) (holding a "formal policy" is a "statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority"); *Baltazar v. Holmes*, 162 F.3d 368, 377 (5th Cir. 1998); *Eugene v. Alief I.S.D.*, 65 F.3d 1299, 1304-05 (5th Cir. 1995), *cert. denied sub nom. Conley v. Eugene*, 517 U.S. 1191 (1996). A municipal "policy" must be a "deliberate and conscious choice" by a municipal policy-maker. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (*plurality*); *Gonzalez v. Ysleta I.S.D.*, 996 F.2d 745, 752-60 (5th Cir. 1993). Whereas, an official "custom" or "practice" is most commonly defined as a "persistent, widespread practice of municipal officials or employees," which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy; actual or constructive knowledge of such

custom or practice must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority. *Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012) ("The City's 'official policies,' however, include any 'persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'"); *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d at 309 (holding municipal policies include persistent, widespread practices of municipal officials or employees which, although not authorized by officially adopted and promulgated policy, are so common and well settled as to constitute a custom that fairly represents municipal policy; actual or constructive knowledge of such customs must be attributable to the municipality's governing body or to an official to whom that body has delegated policy-making authority); *In re Foust*, 310 F.3d at 861-62 (holding a persistent, widespread, practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy will furnish a basis for municipal liability); *McClendon v. City of Columbia*, 258 F.3d 432, 441-42 (5th Cir. 2001) (holding that, in order to demonstrate a municipal policy through custom, the plaintiff must allege a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent police misconduct or that serious incompetence or misbehavior was general or widespread throughout the police force); *see also Sharp v. City of Houston*, 164 F.3d 923, 930 (5th Cir. 1999) (holding evidence established a municipal custom within the police department of a "code of silence" regarding sexual harassment of female officers and of retaliation against female officers who complained about same).

C.     No Vicarious Liability for Municipalities

In *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658 (1978).

the Supreme Court held that a governmental entity can be found liable under Section 1983 only if

the entity itself causes the constitutional violation at issue.  *Monell v. Department of Social Services*

*of the City of New York*, 436 U.S. at 690-91; *Fraire v. City of Arlington*, 957 F.2d 1268, 1277 (5th

Cir. 1992), *cert. denied*, 506 U.S. 973 (1992); *Matthias v. Bingley*, 906 F.2d 1047, 1053 (5th Cir.

1990).  *Respondeat superior* or vicarious liability is not a basis for recovery under Section 1983.

*Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 122 (1992); *Monell v. Department of Social*

*Services of the City of New York*, 436 U.S. at 691-94; *Brown v. Lyford*, 243 F.3d 185, 191 (5th Cir.

2001) (holding a County may not be held liable under a *respondeat superior* theory), *cert. denied*,

534 U.S. 817 (2001);  *Flores v. Cameron County, Texas*, 92 F.3d 258, 263 (5th Cir. 1996) (holding

county liability under §1983 cannot rest on a theory of *respondeat superior*); *Grabowski v. Jackson*

*County Public Defenders Officer*, 79 F.3d 478, 479 (5th Cir. 1996) ("The familiar doctrine of

*respondeat superior* has no application in a section 1983 action against a governmental unit based

on the wrongful acts of its employees."); *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996) (holding

municipalities cannot be held vicariously liable for the actions of their employees); *Rhyne v.*

*Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992) (holding the County could only be held liable

for its non-policy-making employees' acts if the employees were carrying out County policies when

they acted); *Benavides v. County of Wilson*, 955 F.2d 968, 972 (5th Cir. 1992) (holding that, in a

Section 1983 action, a municipality may not be held strictly liable for the acts of its non-policy-

making employees under a *respondeat superior* theory), *cert. denied sub nom. Bassler v. County of*

*Wilson*, 506 U.S. 874 (1992).  A municipality may not be held liable under Section 1983 solely

because it employs a tortfeasor.  *Board of Commissioners, Bryan County, Oklahoma v. Brown*, 520 U.S. at 403; *Gros v. City of Grand Praire, Texas*, 181 F.3d 613, 615 (5th Cir. 1999).  It is only when the execution of the government's policy or custom inflicts the injury that the governmental entity may be held liable under Section 1983.  *Board of Commissioners, Bryan County, Oklahoma v. Brown*, 520 U.S. at 403; *Gros v. City of Grand Praire, Texas*, 181 F.3d at 615.

In contrast, when the discretionary decisions of a local governmental official are constrained by official governmental policies not of that official's making, the official's disobedience of, or departure from, those policies is not considered an act of the governmental entity for Section 1983 purposes.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121-22 (1988) (*plurality*); *McConney v. City of Houston*, 863 F.2d 1180, 1184 & n.2 (5th Cir. 1989).  Thus, when a non-policy-making local governmental employee acts in a manner inconsistent with established governmental policy, the governmental employer cannot be held liable therefor under Section 1983.  *City of St. Louis v. Praprotnik*, 485 U.S. at 121-22; *McConney v. City of Houston*, 863 F.2d at 1184 & n.2.

D.     Sources of Official Policy and Acts of Final Policy-Makers

Two basic configurations can lead to a municipality's liability under Section 1983 for the acts of its officials: first, a municipality's final policy-makers are held effectively to have made policy or condoned the creation of a custom by knowingly ratifying the unconstitutional or illegal actions of subordinate officers or employees, and, second, the municipality may be held liable for the illegal or unconstitutional actions of its final policy-makers themselves as they engage in the setting of goals and the determination of how those goals will be achieved.  *Turner v. Upton County, Texas*, 915 F.2d 133, 136 (5th Cir. 1990), *cert. denied*, 498 U.S. 1069 (1991).

As to the first situation, i.e., liability based upon officially-sanctioned custom or practice, isolated instances of official misconduct by a governmental entity's non-policy-making employees are inadequate to prove knowledge and acquiescence by the entity's policy-makers.  *See Fraire v. City of Arlington*, 957 F.2d at 1278 (holding a city's failure to discipline a police officer for an isolated incident involving the alleged use of excessive force to effect an arrest did not give rise to an inference that the city had an official policy authorizing or encouraging police misconduct); *Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th Cir. 1989) (holding the same), *cert. denied*, 493 U.S. 854 (1989); *Palmer v. City of San Antonio*, 810 F.2d 514, 516 (5th Cir. 1987) (holding the same); *Bennett v. City of Slidell*, 728 F.2d 762, 768 n. 3 (5th Cir. 1984) ("Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy."), *cert. denied*, 472 U.S. 1016 (1985); *Languirand v. Hayden*, 717 F.2d 220, 227 (5th Cir. 1983) (holding a Section 1983 plaintiff asserting police misconduct must allege a "pattern of similar incidents in which citizens were injured or endangered" by policy-consistent misconduct or that serious incompetence or misbehavior was general or widespread throughout the police force), *cert. denied,* 467 U.S. 1016 (1984).  Sufficiently numerous prior incidents of official misconduct, however, may tend to prove a custom and accession to that custom by municipal policy-makers.  *See Bishop v. Arcuri*, 674 F.3d at 467 ("The City's 'official policies,' however, include any 'persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'"); *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 92-93 (5th Cir. 1992) (holding  the City could be held liable for the numerous seizures by municipal police of video and other equipment from adult video arcades over a period of two years where the police consulted with the City Attorney's office,

which approved same, before commencing the seizures and the seizures continued even after the City had requested a federal court to stay a lawsuit filed by arcade operators to permit the state courts to first address the state statute relied upon by the police for the seizures); *Matthias v. Bingley*, 906 F.2d 1047, 1054 (5th Cir. 1990) (holding a city could be held liable for a persistent, widespread, and longstanding practice by the police chief of failing to provide adequate notice to the lawful owners of property lawfully-seized by the police of their right to re-claim same prior to disposition thereof by the police, where responsibility for disposing of such property had been delegated by the city to the police chief).

To succeed under this theory of recovery, a Section 1983 claim against a municipal entity must be based on the implementation or execution of a policy or custom which was officially adopted by that entity's official policy-makers. *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532 (5th Cir. 1996); *Krueger v. Reimer*, 66 F.3d 75, 76 (5th Cir. 1995). The Fifth Circuit has defined an "official policy" as "a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010); *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir.), *cert. denied*, 532 U.S. 1007 (2000).

The second configuration, i.e., liability based upon the official actions of final policy-makers, has been the subject of several Supreme Court decisions since *Monell*. In *City of Oklahoma v. Tuttle,* 471 U.S. 808 (1985), a plurality of the Supreme Court held that proof of a single incident of unconstitutional activity is not sufficient to impose liability on the municipality, unless there is proof that it was caused by an existing, unconstitutional municipal policy, attributable to a final municipal

policy-maker. *Tuttle*, 471 U.S. at 823-24.  That opinion garnered the support of only its author, then-Justice Rhenquist, and then-Chief Justice Burger, and Justices White and O'Connor.  Justices Brennan, Marshall, and Blackmun, concurring in the judgment in *Tuttle*, specifically rejected the implication in the plurality's opinion that only existing municipal policies could form the basis for municipal liability where the acts of an official possessing final municipal policy-making authority were at issue.  *See Tuttle*, 471 U.S. at 831-32.

In *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), the Supreme Court held that municipal liability may, under appropriate circumstances, be imposed for a single decision by final municipal policy-makers.  *Pembauer v. City of Cincinnati*, 475 U.S. at 480-81.  The *Pembauer* plurality, *i.e.*, Justices Brennan, White, Marshall, and Blackmun, held that a municipality may be held liable under Section 1983 for a single decision by its properly constituted legislative body, regardless of whether that body had taken similar action in the past or intended to do so again in the future, because even a single decision by such a body unquestionably constitutes an act of official government policy.  *See Pembauer*, 475 U.S. at 480.  Justices Stevens and O'Connor, each writing separately, agreed with this portion of the plurality opinion.  *See Pembauer*, 475 U.S. at 491.

It is clear in this Circuit that a single unconstitutional act by a local governmental entity's final policy-maker can subject that governmental entity to liability under Section 1983.  *Bennett v. Pippin*, 74 F.3d at 586.  However, that act must reflect an intentional, deliberate, decision by a final policy-maker and, where the act or omission of the final policy-maker personally did not directly cause the violation of a constitutional right, only decisions of the final municipal policy-maker which constitute a conscious disregard for a high risk of unconstitutional conduct by others can give rise to municipal liability.  *Board of Commissioners, Bryan County, Oklahoma v. Brown*, 520 U.S. at

404-05.  One circumstance agreed upon by the Justices in *Pembauer* where such would be the case is that which occurs where a government decision-maker possessing final authority with respect to an area of government responsibility orders or directly participates in the action that causes the alleged violation of the plaintiff's rights.  *See Pembaur v. City of Cincinnati*, 475 U.S. at 481 ("If the decision to adopt that particular course of action is properly made by that government's authorized decision-makers, it surely represents an act of official government 'policy' as that term is commonly understood.  More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly.'").

In *Board of Commissioners, Bryan County, Oklahoma v. Brown,* 520 U.S. at 404-06, the Supreme Court held a County could not be held liable for a single, isolated, allegedly improper, hiring decision by the County Sheriff absent proof the hiring decision rose to the level of deliberate indifference to a plainly obvious risk that the person hired would commit the type of constitutional violation that actually resulted in the plaintiff's injury.  The Fifth Circuit has applied the holding in *Brown* to deny relief to a minor school child sexually assaulted by a school district employee in the absence of proof that the decision to hire the offending employee was deliberately indifferent or proof that proper scrutiny of the employee's background would have revealed that a "plainly obvious" consequence of hiring the person would be a violation of a third-party's federally-protected rights.  *Doe v. Hillsboro I.S.D.*, 113 F.3d 1412, 1416 (5th Cir. 1997).  The Fifth Circuit has also held that claims against municipalities based on a single instance of improper conduct by a municipal official, i.e., episodic claims, must be supported by a showing that the official acted with deliberate indifference to the plaintiff's rights.  *See Flores v. County of Hardeman*, 124 F.3d 736, 738 (5th Cir.

30

1997) (holding that, in an episodic act case, plaintiff must show that officer whose act or omission is challenged acted with deliberate indifference); *Scott v. Moore*, 114 F.3d 51, 54 (5th Cir. 1997) (en banc) (distinguishing between subjective episodic acts or omissions and objective municipal policies and practices).

Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and whether an official has final policy-making authority is a question of state law.  *McMillian v. Monroe County, Alabama*, 520 U.S. 781, 784-88 (1997); *Jett v. Dallas I.S.D.*, 491 U.S. 701, 737 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. at 483 (*plurality*); *Beattie v. Madison County School District*, 254 F.3d 595, 602 (5th Cir. 2001) (an official may be a policymaker for in a particular area or on a particular issue); *Gros v. City of Grand Praire, Texas*, 181 F.3d at 617 (holding the determination as to whether an official has been delegated final policymaking authority is a question of law for the court, not one of fact for the jury).

Identifying a final policy-maker requires examination of applicable state law regarding the legal authority possessed by local officials.  *McMillian v. Monroe County, Alabama*, 520 U.S. at 786-87; *Gros v. City of Grand Praire, Texas*, 181 F.3d at 615-17 (holding sources of state law identifying a final policymaker include not only positive state law but also custom or usage having the force of law); *Esteves v. Brock*, 106 F.3d at 677-78 (holding the determination of whether an official was acting on behalf of the state or the local government is determined by state law). Generally, final policy-makers include those local officials who, by virtue of state law, (1) hold virtually absolute sway over the particular tasks or areas of responsibility entrusted to them and (2) are accountable to no one other than the voters for their conduct in those areas.  *See Beattie v.*

*Madison County School District*, 254 F.3d at 602-03 (emphasizing that the mere existence of oversight, alone, is not enough to disqualify an official as a final policy-maker - the oversight must pertain to the area of authority in question); *Brady v. Fort Bend County*, 145 F.3d at 699-700 (holding a newly elected County Sheriff was responsible under applicable Texas for the decision not to rehire Sheriff's deputies who had campaigned for the ousted incumbent); *Turner v. Upton County*, 915 F.2d at 136 ("It has long been recognized that, in Texas, the county sheriff is the county's final policymaker in the area of law enforcement, not by virtue of delegation by the county's governing body but, rather, by virtue of the office to which the sheriff has been elected.").  The focus of inquiry is on the particular task or duty performed by the official and his or her authority to exercise final control over the performance of that task or duty.  Final policy-makers are usually empowered by state law to "define objectives and choose the means of achieving them" without supervision by any other governmental official.  *Beattie v. Madison County School District*, 254 F.3d at 602 (holding the fact an official exercises discretion does not, standing alone, establish the official as a policymaker - the official must also create policy); *Rhode v. Denson*, 776 F.2d 107, 109 (5th Cir. 1986), *cert. denied*, 476 U.S. 1170 (1986).

In addition to persons identifiable as final policy-makers under state law, the actions of officials who exercise final policy-making authority as a result of a formal delegation of that authority from a local governmental entity's governing body can also provide a basis for holding that governmental entity liable under Section 1983.  *Pembaur v. City of Cincinnati*, 475 U.S. at 483 (*plurality*); *Doe v. Dallas I.S.D.*, 153 F.3d at 216 (holding a local school district did not delegate final District policymaking authority over complaints of sexual misconduct by teachers against students to campus principals although the District had not adopted a formal policy addressing  the

32

manner in which such complaints should be handled); *Matthias v. Bingley*, 906 F.2d at 1054 (holding a city liable for the illegal actions of a city police chief in connection with the disposition of seized private property where the city had delegated responsibility for the property to the chief); *Crowder v. Sinyard*, 884 F.2d 804, 829 (5th Cir. 1989) (holding a jury's finding that a city had delegated its final policy-making authority in the area of law enforcement to a city police chief was supported by the evidence and warranted imposing liability upon the city), *cert. denied*, 496 U.S. 924 (5th Cir. 1990). Only the actions of, or policies established by, those local governmental officials who exercise independent, final, decision-making authority can create a basis for holding a local governmental entity liable under Section 1983. *See Sanders v. English*, 950 F.2d 1152, 1159 n.13 (5th Cir. 1992) (holding a city may be held liable on account of the unconstitutional conduct of city officials only if the city's policy or custom played a part in the violation); *Burns v. City of Galveston*, 905 F.2d 100, 102-03 (5th Cir. 1990) (holding Section 1983 liability for a city can only be based on a deliberate choice to follow a course of action made by final policy-makers); *Worsham v. City of Pasadena*, 881 F.2d 1336, 1240-41 (5th Cir. 1989) (holding the existence of a council with the authority to review and set aside a city mayor's decision to terminate a municipal employee, which it did, precluded a finding that the mayor possessed final city policy-making authority over the employee's termination and, therefore, also precluded a finding of municipal liability resulting from the mayor's subsequently-vacated action).

Furthermore, where the act or omission of the final policy-maker personally did not directly cause the violation of a constitutional right, only decisions of the final municipal policy-maker which constitute a conscious disregard for a high risk of unconstitutional conduct by others can give rise

to municipal liability. *Board of Commissioners, Bryan County, Oklahoma v. Brown*, 520 U.S. at

404-06; *Doe v. Dallas I.S.D.*, 153 F.3d at 216-17.

> A municipality is liable under § 1983 "only where the municipality <u>itself</u> causes the constitutional violation at issue." The violation must be caused by a "municipal policy or custom" consisting of a "'deliberate' or 'conscious' choice" "by city policymakers." This Court has stated that a municipal policy may be established by a persistent pattern of conduct as well as by a formal legal declaration.

*Richardson v. Oldham*, 12 F.3d 1373, 1381-82 (5th Cir. 1994).

The Fifth Circuit has long made clear a Section 1983 plaintiff must establish a causal

connection between an alleged violation of the plaintiff's constitutional rights and the municipality's

policies or customs. *See, e.g., Bishop v. Arcuri*, 674 F.3d at 467 ("A municipality is liable only when

its policy is the 'moving force' behind the suffered injury, but when a municipal policy itself violates

federal law, such a policy necessarily constitutes the 'moving force.'" (*citation omitted*)); *Spiller*

*v. City of Texas City, Police Department*, 130 F.3d at 167 (holding that, to satisfy the cause in fact

requirement, a plaintiff must allege the custom or policy served as the moving force behind the

constitutional violation or that the injuries resulted from the execution of the official policy or

custom; but emphasizing that the relationship between the underlying constitutional violation and

the policy or custom must be based upon specific facts not mere conclusions).

Municipal liability under Section 1983 attaches only when the official responsible for

establishing final policy with respect to the subject matter in question, makes a deliberate choice to

follow a course of action from among various alternatives. *Board of Commissioners, Bryan County,*

*Oklahoma v. Brown*, 520 U.S. at 404-05; *City of St. Louis v. Praprotnik*, 485 U.S. at 121-22;

*Pembaur v. City of Cincinnati*, 475 U.S. at 483-84 (*plurality*); *Rhyne v. Henderson County*, 973 F.2d

at 392. Thus, mere negligence on the part of local governmental final policy-makers does not give

rise to governmental liability under Section 1983. *Daniels v. Williams*, 474 U.S. 326, 331-34 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986); *Doe v. Dallas I.S.D.*, 153 F.3d at 215-17 (holding school district's failure to adopt an official policy addressing allegations of sexual assault by teachers on students could not support Section 1983 liability where that failure was merely an unintentional negligent oversight).

A municipality may be held liable under Section 1983 for failing to adopt a policy when that failure rises to the level of "deliberate indifference" to the need for such a policy. *City of Canton v. Harris*, 489 U.S. at 389; *Colle v. Brazos County*, 981 F.2d at 245-46; *Rhyne v. Henderson County*, 973 F.2d at 392; *Benavides v. County of Wilson*, 955 F.2d at 972-73. Under this test, a governmental entity can be held liable if in the light of the duties assigned to specific officers or employees, the need for such a policy is so obvious, and the absence of such a policy so likely to result in violations of constitutional rights, that the governmental entity's policy-makers can reasonably be said to have been "deliberately indifferent" to the need for the policy. *City of Canton v. Harris*, 489 U.S. at 389. Mere negligence by policy-makers in the face of unconstitutional behavior by municipal employees is insufficient to establish municipal liability under Section 1983. *Collins v. City of Harker Heights, Texas*, 916 F.2d at 286; *Doe v. Dallas I.S.D.*, 153 F.3d at 217. Furthermore, the municipality must be the moving force behind the resulting constitutional violation. *Board of Commissioners of Bryan County v. Brown*, 520 U.S. at 415; *Doe v. Dallas I.S.D.*, 153 F.3d at 215-16.

E.    Summary of Applicable Case Law

"To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth, Tex.,* 588 F.3d 838, 847 (5th Cir.2009). The proposed amended complaint makes no specific factual allegations of the county's policies and simply adds the words

"policies, practices, and/or customs" to Whitley's perceived wrongs. Such allegations are insufficient to survive dismissal. *See Spiller v. City of Tex. City, Police Dep't,* 130 F.3d 162, 167 (5th Cir.1997) (conclusory description of policy or custom insufficient).

*Whitley v. Hanna*, 726 F.3d 631, 649 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1935 (2014)*.*

> "Knowledge on the part of a policymaker that a constitutional violation will most likely result from a[n] ... official custom or policy is a *sine qua non* of municipal liability under section 1983." *Burge v. St. Tammany Parish,* 336 F.3d 363, 370 (5th Cir.2003) (footnote omitted).  Accordingly, a plaintiff must establish that the body governing a municipality, or an official to whom the body had delegated its policy-making authority, had actual or constructive knowledge of the custom or policy at issue. *Id.* (citation omitted).

*Curtis v. Anthony*, 710 F.3d 587, 595 (5th Cir. 2013).

> A claim of municipal liability under Section 1983 "requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski,* 237 F.3d at 578 (citing *Monell,* 436 U.S. at 694, 98 S. Ct. 2018). We have stated time and again that "[w]ithout an underlying constitutional violation, an essential element of municipal liability is missing." *Becerra v. Asher,* 105 F.3d 1042, 1048 (5th Cir.1997); *see also Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 120, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992) "[P]roper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation.").

*Doe ex rel. Magee v. Covington County School Dist. ex rel. Keys*, 675 F.3d 849, 866-67 (5th Cir. 2012).

To succeed on a complaint against a municipality based upon an allegation that non-policymaking employees were inadequately trained, a Section 1983 plaintiff must show (1) the municipality's training procedures were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the training policy, and (3) the inadequate training policy directly caused the plaintiff's injury.  *Whitley v. Hanna*, 726 F.3d at 648-49; *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011); *Zarnow v. City of Wichita Fallas, Texas*, 614 F.3d 161, 170 (5th Cir.

2010), *cert. denied*, 131 S. Ct. 3059 (2011); *Valle v. City of Houston*, 613 F.3d 536, 544, 546 (5th Cir. 2010), *cert. denied*, 563935 (2011); *Sanders-Burns v. City of Plano*, 594 F.3d at 381.  The Fifth Circuit has rarely found municipal liability for a failure to train claim on the basis of a single incident. *Valle v. City of Houston*, 613 F.3d at 549 ("This court has been wary of finding municipal liability on the basis of a single incident to avoid running afoul of the Supreme Court's consistent rejection of respondeat superior liability."); *Sanders-Burns v. City of Plano*, 594 F.3d at 381 ("a showing of deliberate indifference is difficult, although not impossible, to base upon a single incident").

## IX. <u>Supervisory Liability Under Section 1983</u>

Plaintiff has named as defendants the Hospital District and Bexar County, Texas but has not alleged any specific facts showing any person possessing final policymaking or final decision-making authority for either the Hospital District of Bexar County was personally involved in the incident on January 10, 2013 which led to plaintiff's alleged injuries and gives rise to plaintiff's claims against the other defendants in this lawsuit.  Instead, plaintiff alleges only that, at some point after the fact, defendant Whiteley was informed of the conduct of defendant nurses Guardiola and Smith and defendant Whiteley somehow failed to take appropriate action.  Plaintiff has alleged no specific facts showing that this alleged failure on the part of Dr. Whiteley to take remedial action after the fact actually caused any of plaintiff's physical injuries.

Vicarious liability does not apply to Section 1983 claims.  *See Connick v. Thompson*, 563 U.S. 51, 60-62 (2011) (municipality could not be held liable under section 1983 absent proof its failure to adequately train its employees rose to the level of deliberate indifference to the rights of

its citizens); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior); Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694 (1978) (a local government may not be sued under § 1983 for injury inflicted solely by its non-policymaking employees or agents). Under § 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability; the doctrine of *respondeat superior* does not apply to such actions.  *See Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (under § 1983, a government official may be held liable solely for his own conduct).  Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under Section 1983.  *See Jones v. Lowndes County, Mississippi*, 678 F.3d 344, 349 (5th Cir. 2012) ("A Section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'"); *Zarnow v. City of Wichita Falls, Texas*, 614 F.3d at 169 ("To support a supervisory liability claim, the misconduct of a subordinate must be conclusively linked to the action or inaction of the supervisor.").

Generally, a supervisor may be held liable only if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation, such as where the supervisor implemented or enforced unconstitutional policies which actually resulted in the plaintiff's injuries. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).  A supervisor may be held personally liable for inadequate supervision or a failure to train subordinates only where the failure to train or supervise amounts to deliberate indifference and is a proximate cause of a constitutional violation.  *See Porter v. Epps*, 659 F.3d at 446 ("A supervisor may also be liable for failure to supervise or train if: '(1) the

38

supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'"); *Brown v. Callahan*, 623 F.3d 249, 254 n.1 (5th Cir. 2010) (supervisor may be held liable under Section 1983 for failure to train or supervise subordinates if (1) the supervisor failed to train or supervise, (2) a causal link exists between the failure and violation of plaintiff's rights, and (3) the failure to train or supervise amounts to deliberate indifference), *cert. denied*, 131 S. Ct. 2932 (2011). Merely negligent or incompetent supervision cannot form a basis for liability under Section 1983; the supervisor's actions or inactions must rise to the level of "deliberate indifference." *Id.*

> "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, — U.S. —, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011) (internal quotation marks omitted, alteration in original) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). To establish that a state actor disregarded a known or obvious consequence of his actions, there must be "actual or constructive notice" "that a particular omission in their training program causes...employees to violate citizens' constitutional rights" and the actor nevertheless "choose[s] to retain that program." *Id.* (citing *Bryan Cnty.*, 520 U.S. at 407, 117 S. Ct. 1382). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference," because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

*Porter v. Epps*, 659 F.3d at 446-47.

Plaintiff has alleged no specific facts showing any person possessing final policymaking or final decision-making authority for either the Hospital Distruict or Bexar County, Texas either (1) displayed deliberate indifference to plaintiff's constitutional rights, (2) had any personal involvement in any of the incidents which allegedly caused plaintiff's physical injuries, (3) failed to properly train

defendants Smith or Guardiola, or (4) had any personal knowledge of any of the matters about which plaintiff complains in this § 1983 lawsuit until after the events which allegedly caused plaintiff's injuries.

## X. Inadequate Medical Care Complaints by Pretrial Detainees

The Due Process Clause of the Fourteenth Amendment accords pretrial detainees rights not enjoyed by convicted inmates under the Eighth Amendment prohibition against cruel and unusual punishment.  *Bell v. Wolfish*, 441 U.S. 520, 535-39 (1979); *Colle v. Brazos County, Texas*, 981 F.2d 237, 244 (5th Cir. 1993) (holding that, while a convicted prisoner has an Eighth Amendment right to be free from cruel and unusual punishment, a pretrial detainee has a Fourteenth Amendment right to be free from punishment altogether).  "A pretrial detainee's right to medical care is violated if 'an officer acts with deliberate indifference to a substantial risk of serious medical harm and resulting injuries.'"  *Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011); *Mace v. City of Palestine*, 333 F.3d 621, 625-26 (5th Cir. 2003).  The standard for review of the quality and character of the medical care received by a pretrial detainee under the Due Process Clause of the Fourteenth Amendment is whether the pretrial detainee received reasonable medical care, unless the failure to supply such care was reasonably related to a legitimate governmental objective.  *Hare v. City of Corinth*, 135 F.3d 320, 327 (5th Cir. 1998); *Nerren v. Livingston Police Department*, 86 F.3d 469, 473-74 (5th Cir. 1996).  On several occasions, the Fifth Circuit has noted that the distinction between this standard and the standard set forth by *Estelle v. Gamble* may be more ethereal than substantial.  *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001) (holding there is no significant difference between pretrial detainees and convicted inmates concerning basic human needs such as medical care), *cert. denied*, 534 U.S. 1136 (2002); *Hare v. City of Crointh*, 74 F.3d 633, 643 (45th Cir. 1996).

40

The Fifth Circuit has held that a pretrial detainee's due process right to medical care is violated by a state official's episodic act or omission only if the official acts with subjective deliberate indifference to the detainee's rights.  *Brown v. Strain*, 663 F.3d at 249 ("To show subjective deliberate indifference, a plaintiff must present evidence: (1) that each defendant had subjective knowledge of 'facts from which an inference of substantial risk of serious harm could be drawn,' (2) that each defendant actually drew that inference; and (3) that each defendant's response to the risk indicates that the appellee 'subjectively intended that harm occur.'"); *Tamez v. Manthey*, 589 F.3d 764, 770 (5th Cir. 2009) (holding the same).  The Fifth Circuit has defined "subjective deliberate indifference" as subjective knowledge of a substantial risk of serious medical harm, followed by a response of deliberate indifference.  *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999); *Sibley v. Lemaire*, 184 F.3d 481, 489 (5th Cir. 1999), *cert. denied*, 529 U.S. 1019 (2000).  Put more simply, the pretrial detainee must show the state official knew of and disregarded an excessive risk to the inmate's health or safety.  *Gibbs v. Grimmette*, 254 F.3d at 549; *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).  Deliberate indifference in this context is more than mere negligence in failing to supply medical treatment; likewise, disagreement with medical treatment alone cannot support a claim under Section 1983.  *Mace v. City of Palestine*, 333 F.3d at 626 (holding officer must have a subjective intent to cause harm); *Gibbs v. Grimmette*, 254 F.3d at 549-50 (holding a Sheriff's refusal to order a tuberculosis skin test for a pretrial detainee who had not been exposed to an active TB case was not deliberate indifference even though convicted prisoners received such tests annually pursuant to state law).

Plaintiff's original complaint does not contain any specific facts showing any person possessing final policymaking or final decision-making authority for the Hospital District or Bexar

County ever displayed subjective deliberate indifference to plaintiff's serious medical needs. Plaintiff does allege that defendants Guardiola and Smith engaged in episodic incidents of negligent conduct during the time they cared for plaintiff.   Allegations of merely negligent behavior on the part of a defendant will not suffice to state a cause of action under § 1983. *Daniels v. Williams*, 474 U.S. 327, 332-35 (1986).  Nor, as explained above, can plaintiff rely upon the doctrine of *respondeat superior* or some other vicarious liability theory to hold the Hospital District or Bexar County liable under § 1983 for the alleged negligence of nurses Smith or Guardiola.  Plaintiff has not alleged any specific facts showing any person or persons possessing final policymaking or final decision-making authority for the Hospital District or Bexar County ever displayed deliberate indifference to plaintiff's rights or serious medical needs.  While plaintiff has alleged facts showing defendants Guardiola and Smith may have engaged in negligent conduct during their care of plaintiff, plaintiff does not allege any specific facts sufficient to overcome the defense of qualified immunity which show either of these two defendants ever displayed subjective deliberate indifference to any of plaintiff's serious medical needs or to any of plaintiff's federal constitutional rights.

## XI. Pendent State Law Claims

For the reasons discussed at length above, all of plaintiff's federal civil rights claims against the Hospital District, Bexar County, and defendants Guardiola and Smith fail to state a cause of action under Section 1983 and are properly subject to dismissal under Rule 12(b)(6), as frivolous, or both.  Under such circumstances, pursuant to 28 U.S.C. § 1367(c)(3), this Court declines to exercise supplemental jurisdiction over plaintiff's state law claims against the Hospital District, Bexar County, defendant Guardiola, and defendant Smith.  Plaintiff's state tort claims against all the defendants will be dismissed without prejudice.

42

## XII. <u>ORDER</u>

Accordingly, it is hereby ORDERED that:

1. The referral of this cause to the Magistrate Judge is temporarily **WITHDRAWN.**

2. Defendant Hospital District's motion to dismiss for failure to state a claim, filed October 23, 2015 (ECF no. 30), is **GRANTED**; all of plaintiff's § 1983 claims against defendant Hospital District (which incorporate plaintiff's § 1983 claims against the Robert B. Green Clinic and University Hospital) are **DISMISSED WITHOUT PREJUDICE pursuant to Rule 12(b)(6) for failure to state a cause of action.**

3. Defendant Hospital District's motion to dismiss for failure to exhaust available administrative remedies, filed November 11, 2015 (ECF no. 34), is **GRANTED**; all of plaintiff's § 1983 claims against defendant Hospital District are **DISMISSED WITHOUT PREJUDICE pursuant to 42 U.S.C. § 1997e(a) for failure to exhaust available administrative remedies.**

4. All of plaintiff's § 1983 claims against defendant Bexar County (which incorporate all of plaintiff's § 1983 claims against the BCADC) are **DISMISSED WITHOUT PREJUDICE** as frivolous.

5. All of plaintiff's § 1983 claims against defendants Guardiola or Smith are **DISMISSED WITHOUT PREJUDICE**  as frivolous.

5. All of plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE.**

6. **The Clerk shall send a copy of this Memorandum Opinion and Order and the Final Judgment in this case to the Pro Se Staff Attorney, Attn.: Keeper of the "Three Strikes List,"**

U.S. District Court for the Eastern District of Texas for the Tyler Division, 211 West Ferguson, Tyler, Texas 75702, so that this case may be recorded in the "Three-Strikes List."

SIGNED this 8th day of February, 2015.

_____
David Alan Ezra
Senior United States Distict Judge